UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEVEN COLVIN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:11CV2242 ACL |
| ) | |
| MICHAEL BOWERSOX, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Steven Colvin for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

### I. Procedural History

Petitioner is presently incarcerated at the South Central Correctional Center in Licking, Missouri, pursuant to the Sentence and Judgment of the Circuit Court of St. Louis County, Missouri. (Respt's Ex. B at 41-43.)

On June 2, 2008, a jury found Petitioner guilty of one count of second degree domestic assault and one count of felonious restraint. (Id. at 33-34.) Petitioner was sentenced as a persistent offender to two concurrent terms of fifteen years imprisonment. (Respt's Ex. A at 191.)

In his single point raised on direct appeal, Petitioner argued that the trial court erred in denying his Motion for Judgment of Acquittal and for entering judgment and sentence on the felonious restraint charge because the evidence was insufficient to support his conviction. (Respt's Ex. C at 6.) On June 23, 2009, the Missouri Court of Appeals affirmed Petitioner's convictions. (Respt's Ex. E.)

Petitioner filed a timely motion for post-conviction relief under Rule 29.15. (Respt's Ex. G at 3-13.) After the appointment of counsel, Petitioner filed an amended post-conviction relief

1

motion and request for an evidentiary hearing. (Id. at 24-46.) In the amended motion, Petitioner raised the following claims: (1) he was denied due process of law and a fair trial when he was visibly restrained and shackled in the presence of the venire panel without good cause and in the absence of a case-specific determination of necessity by the trial judge; and (2) he was denied effective assistance of counsel when trial counsel failed to request to quash the venire panel after he learned that Petitioner had been visibly restrained and shackled in the presence of the venire panel for a period of approximately fifteen to twenty minutes. (Id.) The motion court denied Petitioner's claims after holding an evidentiary hearing. (Id. at 51-60.)

Petitioner raised the same two grounds for relief on appeal from the denial of post-conviction relief. (Respt's Ex. H.) The Missouri Court of Appeals affirmed the decision of the motion court. (Respt's Ex. J.)

Petitioner timely filed the instant Petition on December 27, 2011. (Doc. # 1.) Petitioner raises three grounds for relief: (1) the evidence was insufficient to support his conviction for felonious restraint; (2) the motion court erred in denying his post-conviction relief motion because he was visibly restrained and shackled within the courtroom and in the presence of the venire panel without good cause and in the absence of a case-specific determination of necessity by the trial judge; and (3) he received ineffective assistance of counsel when trial counsel failed to move to quash the venire panel after learning Petitioner had been in the presence of and seen by the venire panel in visible restraints and shackles. (Id.)

On February 23, 2012, Respondent filed a Response to Order to Show Cause, in which he argues that ground two is procedurally defaulted and all of Petitioner's grounds for relief fail on their merits. (Doc. # 9.) On March 9, 2012, Petitioner filed a Traverse, in which he provides further argument in support of his Petition. (Doc. # 11.)

## II. Facts[1]

Petitioner was at the home of D.B. Petitioner and D.B. had recently ended a five-year relationship. Petitioner told D.B. he wanted to stay the night, but D.B. told him that he could not. D.B. offered to drive Petitioner home. Petitioner accepted and rode in the passenger seat of D.B.'s car as D.B. drove.

During the drive, Petitioner began to hit D.B. in the head and face while calling her names. The car then hit a curb and stopped. Petitioner continued to hit D.B. D.B. reached for her keys in the ignition, but Petitioner grabbed her hand. D.B. jerked her hand lose from Petitioner's grip and exited the car. D.B. ran from the car, but her knee popped out of place and she fell to the ground. Petitioner caught up to D.B. and began hitting her again. D.B. yelled for help, and people in a nearby apartment building came out and called the police. Petitioner ran away, but was found and arrested soon after by police.

Petitioner was convicted by a jury of both second degree assault and felonious restraint. He was sentenced to two concurrent terms of 15 years.

## III. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] The Court's summary of the facts is taken from the decision of the Missouri Court of Appeals on direct appeal. (Respt's Ex. E at 2.)

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in Williams v. Taylor, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." Id. at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." Id. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

### IV. Procedural Default

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. Wemark v. Iowa, 322 F.3d 1018, 1020–21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam) and Anderson v. Groose, 106 F.3d 242, 245 (8th Cir. 1997)). Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim.

4

Baldwin v. Reese, 541 U.S. 27, 29 (2004).  A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition.  Wemark, 322 F.3d at 1021 (internal quotation marks omitted) (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996)).  Claims that are not fairly presented to the state courts are procedurally defaulted.  See id. at 1022.

Missouri requires the raising of constitutional claims at the first available opportunity. See In re J.M.N., 134 S.W.3d 58, 73 (Mo. Ct. App. 2004); In re T.E., 35 S.W.3d 497, 504 (Mo. Ct. App. 2001).  Alleged trial errors, including constitutional claims of trial error, must be raised on direct appeal; for "[p]ost-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review."  State v. Clark, 859 S.W.2d 782, 789 (Mo. Ct. App. 1993); accord Amrine v. State, 785 S.W.2d 531, 536 (Mo. 1990) (en banc); Allen v. State, 903 S.W.2.

Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court.  Sawyer v. Whitley, 505 U.S. 333, 338–39 (1992).  "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,]…' impeded [his] efforts to comply with the State's procedural rule."  Maples v. Thomas, 132 S.Ct. 912, 922 (2012) (alternations in original) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991).

Respondent contends that Petitioner's second ground for relief is procedurally defaulted, because it was not raised on direct appeal.  In his second ground for relief, Petitioner argues that the motion court erred in denying his post-conviction relief motion, because he was visibly

5

shackled in the presence of the venire panel. Petitioner argued in his amended post-conviction relief motion that he was denied due process when he was visibly restrained in the presence of the venire panel and the jury on the first day of trial.

Petitioner also raised this claim in his appeal from the denial of post-conviction relief. The Missouri Court of Appeals held that Petitioner's claim was not cognizable. (Respt's Ex. J at 2.) The court noted that a post-conviction motion is not a substitute for a direct appeal. (Id.) The court stated that Petitioner's claim was apparent at trial, and Petitioner could have and should have raised the issue on direct appeal. (Id.)

Claims that have not been fairly presented to the state courts are procedurally defaulted and may not give rise to federal habeas relief unless the petitioner establishes "cause for not presenting the claim on post-conviction appeal and prejudice from the failure, or a fundamental miscarriage of justice-meaning that he is actually innocent." Storey v. Roper, 603 F.3d 507, 523-24 (8th Cir. 2010) (citing Schlup v. Delo, 513 U.S. 298, 324 (1995)). Petitioner has not made any allegation of cause and prejudice to excuse the default.

In Schlup, the Supreme Court recognized that a habeas petitioner could present a claim of actual innocence as a "gateway" to resurrecting procedurally defaulted claims of constitutional error which occurred in the underlying trial, but "such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Schlup, 513 U.S. at 324. Petitioners asserting innocence as a gateway to defaulted claims must establish that in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327.

The Supreme Court explained in House v. Bell, 547 U.S. 518 (2006), that the Schlup standard "is demanding and permits review only in the 'extraordinary' case. At the same time, though, the Schlup standard does not require absolute certainty about the petitioner's guilt or innocence." House, 547 U.S. at 538 (citations omitted). And more recently in McQuiggin v. Perkins, 133 S.Ct. 1924 (2013), the Supreme Court reaffirmed that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief." McQuiggin, 133 S.Ct. at 1931. The Court further stated that it had "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." Id.

Here, Petitioner has not made a showing of actual innocence as a gateway to excuse his procedural default. Petitioner's second ground for relief cannot be resurrected from procedural default, because there is no new evidence or a credible claim of actual innocence.

## V. Petitioner's Claims

The undersigned will discuss Petitioner's three grounds for relief in turn.

**1.     Ground One**

Petitioner argues in his first ground for relief that there was insufficient evidence supporting his conviction for felonious restraint. Petitioner contends that there was insufficient evidence supporting two elements of the offense: (1) that he substantially interfered with D.B.'s liberty; and (2) that he put D.B. at risk of serious physical injury.

Due Process and the Sixth Amendment "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged,

beyond a reasonable doubt." United States v. Gaudin, 515 U.S. 506, 510 (1995); Johns v. Bowersox, 203 F.3d 538, 543 (8th Cir. 2000) (quoting Gaudin, 515 U.S. at 510). Therefore, a petitioner is entitled to habeas corpus relief under § 2254 "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979); Nance v. Norris, 392 F.3d 284, 289-90 (8th Cir. 2004). The relevant question in analyzing such a claim is

> whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

Jackson, 443 U.S. at 319 (citation omitted); Skillicorn v. Luebbers, 475 F.3d 965, 977 (8th Cir. 2007) (quoting Jackson, 443 U.S. at 319), cert. denied, 128 S.Ct. 297 (2007).

The scope of habeas review of such a claim is "extremely limited." Skillicorn, 475 F.3d at 977. The court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and . . . must defer to that resolution." Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003) (quotation marks omitted) (quoting Sexton v. Kemna, 278 F.3d 808, 814 (8th Cir. 2002)). Additionally, the federal habeas court may not make its own determination of witness credibility, for that determination is for the state court trier of fact. Robinson v. LaFleur, 225 F.3d 950, 954 (8th Cir. 2000). Eyewitness testimony to the crime charged may be sufficient to satisfy due process, due to the assumption the jury believes the witness's story. See Tibbs v. Florida, 457 U.S. 31, 45 n. 21 (1982) (noting that, "[i]f the jury believed the [eyewitness's testimony], the State's presentation was more than sufficient to satisfy due process"); Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir. 2000) ("A victim's testimony is, by itself, normally sufficient to sustain a conviction").

8

A person commits the crime of felonious restraint under Missouri law when he "knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty and exposes him to a substantial risk of serious physical injury." Mo. Rev. Stat. § 565.120.

The Missouri Court of Appeals rejected Petitioner's claim, holding that there was sufficient evidence to satisfy both elements of the crime of felonious restraint. (Respt's Ex. E at 3.) The Court stated:

> A "substantial interference with liberty" requires that another prevent the victim from "going about her business, which is more than a slight inconvenience." State v. Abel, 939 S.W.2d 539, 541 (Mo. App. E.D. 1997). In Abel we found that tightly clutching a victim's arm and threatening her with a bladed instrument was enough to satisfy this element. Id. Here there was evidence that [Petitioner] grabbed [D.B.]'s arm and beat her about the head and face. Therefore, this element is satisfied.
> Further, there was clearly a "substantial risk of serious injury," as [Petitioner] had already beaten [D.B.], and would go on to beat her again after she got out of the car and fell to the ground. Her injuries were severe enough to require a CAT scan to determine whether or not she had suffered a brain injury. There was also sufficient evidence to satisfy this element.
> Because there was sufficient evidence to support both elements challenged by [Petitioner], the trial court did not err. Point denied.

(Id. at 3-4.)

The victim, D.B., testified that Petitioner started striking her in the face while she was driving him home. (Respt's Ex. A at 95.) D.B. stated that the car hit a curb and came to a stop. (Id. at 96.) D.B. testified that she tried to take the key out of the ignition, but Petitioner grabbed her hand and restrained her from getting out of the vehicle. (Id. at 96.) D.B. testified that, after she jerked her hand free from Petitioner, she started running. (Id. at 99.) D.B. stated that Petitioner caught up with her and started hitting her on the head. (Id.) She testified that she fell down while Petitioner was hitting her, which caused her knee to pop out of place. (Id.) D.B. testified that her eye was shut and she had a knot on the top of her head as a result of Petitioner striking her. (Id. at 100.)

9

The Missouri Court of Appeals reasonably determined that, viewing the evidence in the light most favorable to the verdict, there was sufficient evidence to support Petitioner's conviction of felonious restraint. The court noted that, under Missouri law, "substantial interference with liberty" requires that the victim be prevented from "going about her business." (Respt's Ex. E at 3.) The victim's testimony demonstrated that Petitioner began striking her in the face while she was driving, held her hand to prevent her from leaving the vehicle, and then continued to strike her after she left the vehicle. (Respt's Ex. A at 95-96.) A rational trier of fact could have determined from this evidence that Petitioner substantially interfered with D.B.'s liberty.

The evidence presented at trial also demonstrated that Petitioner exposed D.B. to a substantial risk of serious physical injury. Petitioner repeatedly struck D.B. in the face while she was operating a motor vehicle, causing the vehicle to hit a curb. As the Missouri Court of Appeals pointed out, D.B.'s injuries were severe enough to require a CAT scan to determine whether she had suffered a brain injury. (Respt's Ex. A at 129-30.)

Thus, Petitioner's first ground for relief will be denied.

**2.      Ground Two**

In his second ground for relief, Petitioner argues that the motion court erred in denying his post-conviction relief motion, because he was visibly shackled in the presence of the venire panel. Although the Court has found that Petitioner's second ground for relief is procedurally defaulted, the Court will show that this claim also fails on its merits.

The record reveals that a hearing was held prior to the venire being called into the courtroom, during which Petitioner's clothing was discussed. (Respt's Ex. A at 7-9.) The court advised Petitioner that it was his choice whether to wear his "jail clothes" or "street clothes." (Id.) Petitioner testified that he wished to wear the jail clothes. (Id. at 9.) Defense

counsel informed the jury panel during voir dire that Petitioner would be wearing his jail clothes, and questioned them to ensure they would not make a negative inference as a result. (Id. at 63.) During a recess after voir dire, but before the jury was seated, a discussion occurred regarding an incident in the hallway where the guards were attempting to remove the handcuffs from Petitioner, but Petitioner indicated that he wanted them to remain on. (Id. at 70-71.)

At the evidentiary hearing in connection with his post-conviction motion, Petitioner testified that he was brought into the courtroom the morning of trial wearing his jail clothes and that his feet and hands were shackled, plus his handcuffs were attached to a chain that was around his waist. (Respt's Ex. F at 11.) Petitioner testified that counsel and the judge were out of the courtroom, and he was seated at the defense counsel table by himself. (Id.) Petitioner testified that the venire was brought into the courtroom, and he sat at the table in the presence of the jury for ten to twenty minutes. (Id. at 11-12.) Petitioner testified that, after this period, the deputies were instructed to take Petitioner out of the courtroom and into the hallway to remove the handcuffs but not the leg irons. (Id. at 15.) Petitioner stated that on the second day of trial, the deputies removed the leg irons. (Id.)

Defense counsel testified that he did not recall Petitioner being in any restraints on the morning of the first day of trial. (Id. at 50.) Counsel testified that, upon returning to the courtroom from giving the judge his strikes, he noticed that Petitioner was in restraints and that some members of the venire were in the courtroom. (Id. at 51-52.) Counsel stated that he immediately went to the judge's chambers to ask that the shackles be removed, and the judge agreed that the shackles should be removed. (Id. at 53.) Counsel testified that Petitioner was taken into the hallway to have the shackles removed, but Petitioner told the deputies that he wanted the shackles to remain on. (Id. at 54.)

11

An intern with the Public Defender's office, who assisted with Petitioner's trial, testified that Petitioner was in leg irons for the entire trial. (Id. at 83.) On cross examination, the intern admitted that she did not remember the whole trial and that she believed the discussion about shackles took place in the morning prior to voir dire. (Id. at 90-92.) When asked to sit in the jury box, the intern testified that she could not see the hands or legs of the people seated at the counsel table. (Id. at 94.)

The motion court rejected Petitioner's claim, holding that the jury only saw Petitioner shackled while he was being transported into the courtroom and then quickly brought out again. (Respt's Ex. G at 57.) The court found that Petitioner was unable to show prejudice by his brief exposure in shackles in front of the jury. (Id.) The court stated that there was no credible evidence that any jury member who sat on the trial actually was present when Petitioner was brought into the courtroom with shackles. (Id.) Finally, the court found that Petitioner cannot demonstrate prejudice from wearing restraints, because Petitioner made it clear that he wanted to wear shackles in front of the jury. (Id. at 58.)

Because shackling a defendant during a trial is "inherently prejudicial," Holbrook v. Flynn, 475 U.S. 560, 568 (1986), the Supreme Court has held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." Deck v. Missouri, 544 U.S. 622, 635 (2005). However, federal courts have consistently held "that brief and inadvertent exposure of [shackled] defendants to jurors is not inherently prejudicial; the defendant must bear the burden of affirmatively demonstrating prejudice." See, e.g., United States v. Robinson, 645 F.2d 616, 617 (8th Cir. 1981) ("far less danger of prejudice arises in a situation where a juror's viewing of a defendant in custody is fleeting and outside the courtroom."); Wilson v. McCarthy, 770 F.2d 1482, 1485-86 (9th Cir.

1985) (concluding that a jury's brief, inadvertent observation of a defendant in shackles was not sufficient to justify reversal in the absence of an affirmative showing of actual prejudice).

This Court agrees with the state court that Petitioner failed to affirmatively demonstrate prejudice from the brief, inadvertent exposure to the jury. It is unclear whether any of the jurors actually saw Petitioner in shackles. In addition, Petitioner's allegations of prejudice are disingenuous in light of his request to deputies to keep the shackles on. The motion court applied the correct standard to this issue, and its decision was not contrary to or an unreasonable application of clearly established federal law. As a result, Petitioner is not entitled to relief on ground two of the Petition.

**3.     Ground Three**

In his third and final ground for relief, Petitioner contends that he received ineffective assistance of counsel when trial counsel failed to move to quash the venire panel after learning Petitioner had been in the presence and seen by the venire panel in visible restraints and shackles.

Petitioner raised this claim in his post-conviction motion, and in his appeal from the denial of post-conviction relief. The Missouri Court of Appeals held as follows:

> We find no clear error in the motion court's denial of this claim. To begin, [Petitioner] failed to meet his burden of demonstrating that any members of the venire panel actually observed him in shackles. *State v. Merrick*, 257 S.W.3d 676, 680 (Mo. App. S.D. 2008); *see also Davidson v. State*, 308 S.W.3d 311, 317 (Mo. App. E.D. 2010) (noting constitutional protections for criminal defendants do not apply if the shackles were not visible to the jury). While [Petitioner] and [defense counsel's intern] testified to that effect, the motion court found [Petitioner]'s testimony to be not credible and found [the intern]'s testimony to be unreliable. Defense counsel, in contrast, whom the motion court credited as credible, testified that he could not say one way or the other whether any person who actually served on the jury ever saw [Petitioner] shackled. We defer to the motion court's superior opportunity to judge the credibility of the witnesses. *Bradley v. State*, 292 S.W.3d 561, 566 (Mo. App. E.D. 2009). Furthermore, to the extent that any venire person observed [Petitioner] in shackles, any exposure was inadvertent and short-lived. *See State v. Snowden*, 285 S.W.3d 810, 815 (Mo. App. S.D. 2009) (noting that a brief, inadvertent exposure of the jury to a

13

> handcuffed defendant while the defendant is being escorted from one place to another does not deprive the defendant of a fair trial). Lastly, [Petitioner]'s complaint about counsel rings hollow when [Petitioner] himself wanted to remain in shackles. Counsel is not ineffective simply because he accedes to his client's wishes.

(Respt's Ex. J at 3-4.)

The decision of the state court was not contrary to or an unreasonable application of clearly established federal law. As previously discussed, Petitioner failed to show that any of the members of the jury actually saw him in shackles. To the extent jurors did see Petitioner in shackles, the exposure was brief. Defense counsel had informed the jury panel during voir dire that Petitioner would be wearing his jail clothes, and questioned them to ensure they would not make a negative inference as a result.

In addition, Petitioner himself asked to remain in shackles. Defense counsel testified at the evidentiary hearing that he did not move to quash the venire panel, because it had been Petitioner's "idea to be in the shackles in front of the jury." (Respt's Ex. F at 54.) Petitioner's claim that counsel was ineffective when Petitioner's own request was carried out lacks merit. As a result, ground three will be denied.

## VI.  **Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Petitioner has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable

jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## **ORDER**

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of March, 2015.